

FILED

JUL 18 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WAYNE JAMES WOODS,<br><br>        Petitioner,<br><br>     v.<br><br>DIRECTOR OF CORRECTIONS,<br><br>        Respondent. | Case No. CV 01-01115 AHM (AN)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable A. Howard Matz, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the Magistrate Judge recommends that the Court deny the Third Amended Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("TAP") and dismiss this action with prejudice.

## I. BACKGROUND

**A.    Prior Proceedings**

On June 20, 1996, Petitioner Wayne James Woods ("Petitioner") was convicted by jury trial in Los Angeles County Superior Court of possession of a controlled substance (rock cocaine), in violation of CAL. HEALTH & SAFETY CODE § 11350(a).

DOCKETED ON CM

JUL 18 2006

BY _____ 040

1  [Reporter's Transcript on Appeal ("RT") at 426-27; Clerk's Transcript ("CT") at 84-85.]

2  After a bifurcated trial, the jury found beyond a reasonable doubt that Petitioner had

3  suffered four prior serious and/or violent felony convictions, which qualified as "strikes"

4  under California's Three Strikes Law (CAL. PENAL CODE §§ 1170.12(a)-(d); 667(b)-(i)).

5  [RT at 508-09; CT at 136-39.]  The court denied Petitioner's motion for a new trial and

6  declined to exercise its discretion to dismiss a prior "strike" felony conviction pursuant

7  to CAL. PENAL CODE § 1385 and *People v. Superior Court (Romero)*, 13 Cal.4th 497,

8  504, 53 Cal.Rptr.2d 789 (1996). [RT at 540-41, 549.] Petitioner was sentenced to a total

9  term of 25 years to life in state prison pursuant to the Three Strikes Law. [RT at 548-50;

10  CT at 176-78.]

11  Although Petitioner elected to waive his right to counsel and represent himself at

12  trial, he was represented by an appointed attorney on direct appeal.  [Respondent's

13  Motion to Dismiss ("Motion"), Ex. A at 17; Ex. D at 26; Ex. F at 94.]  Petitioner

14  appealed his judgment of conviction to the California Court of Appeal, Second Appellate

15  District, Division One, raising three claims attacking his Three Strikes sentence.[1] *[Id.,*

16  Ex. D.]  In a reasoned opinion, the Court of Appeal rejected Petitioner's claims on the

17  merits. *[Id.,* Ex. E.]  The Supreme Court of California denied review without comment.

18  *[Id.,* Exs. F, G.]

19  During the ensuing four-year period, Petitioner filed at least sixteen petitions on

20  collateral review at all levels of the state courts.  By way of brevity, and for purposes of

21  the proceeding exhaustion and procedural default analyses, the Court will discuss *only*

22  those petitions filed in the California Supreme Court.

23  */ / /*

24

25  [1] Petitioner argued the Three Strikes Law is unconstitutionally arbitrary in violation

26  of the Equal Protection Clause and due process, that the trial court abused its discretion

27  in refusing to strike the priors because Petitioner's sentence amounts to cruel and unusual

28  punishment under state law, and that the jury improperly found four prior strikes true
     when they should have found only two.  [Motion, Ex. D at 57-86.]

1    On February 18, 2000, Petitioner filed a habeas petition with the California
2  Supreme Court raising a single claim of ineffective assistance of appellate counsel, and
3  it was denied without comment on April 26, 2000. [*Id.*, Exs. O, P.] On February 23,
4  2000, Petitioner filed a "petition for hearing" with the California Supreme Court that was
5  construed as a petition for review and denied without comment on March 29, 2000.[2/]
6  [*Id.*, Exs. M, N.] On August 14, 2000, Petitioner filed another habeas petition in the
7  California Supreme Court, raising four claims: "I. Denial of Effective Assistance of
8  Counsel due to judicial interferences with the defense; II. Suppression of Material
9  Exculpatory Evidence; [III.] Denial of right to Fair Sentencing and; [IV.] Ineffective
10 Assistance of Appellate Counsel." [*Id.*, Ex. Q.] That petition was denied on November
11 29, 2000, with citations to *In re Robbins*, 18 Cal.4th 770, 780, 77 Cal.Rptr.2d 153
12 (1998); and *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509 (1993). [*Id.*, Ex. R.]

13    On November 18, 2001, in an apparent effort to exhaust claims he raised in his
14 original federal habeas petition, Petitioner filed a new habeas petition with the California
15 Supreme Court raising all ten of his pending claims. [Supplemental Return to Third
16 Amended Petition ("Supplemental Return"), Ex. A.] That petition was denied on June

17

18 ─────────────────────

19    [2/] Petitioner had filed a petition for writ of error *coram nobis* in the trial court,
20 claiming he had newly-discovered evidence of his innocence, that the prosecution
   improperly suppressed that and other evidence, and that the prosecution allowed a
21 witness to commit perjury. [Motion, Ex. H.] The petition was denied, and counsel was
22 appointed for Petitioner to appeal the decision. [*Id.*, Exs. I, J.] On appeal, counsel
   submitted a brief to the Court of Appeal pursuant to *People v. Wende*, 25 Cal.3d 436, 158
23 Cal.Rptr. 839 (1979). [*Id.*, Ex. K.] The brief raised no issues, but instead requested that
24 the court independently review the entire record. [*Id.* at 181-82.] In the attached
   declaration, counsel also informed the court that Petitioner had been supplied with a copy
25 of the brief and advised that he could personally file a supplemental brief. [*Id.* at 183.]
26 Petitioner was independently notified by the court that he could file a supplemental brief
   and granted an extension of time to do so, but he did not file one. [Motion, Ex. L at 187.]
27 The court denied the appeal and concluded there were no arguable issues. [*Id.*] The
28 "petition for hearing" in the California Supreme Court was an appeal of that decision.

1    12, 2002, with citations.[3/] [*Id.* at 36.] Petitioner filed an additional habeas petition in the

2    state's high court on May 17, 2002, and that petition was denied on October 23, 2002.[4/]

3    **B.    Pending Petition**

4           By way of the TAP, Petitioner seeks to challenge his conviction and sentence in

5    this Court, raising ten claims for relief. [TAP at 6-7; attachments; Traverse at 11-22.]

6    Respondent filed the Motion to dismiss the original petition on the ground that claims

7    two through seven were unexhausted, and that claims two, four and six were also

8    procedurally barred.  The Court subsequently issued a Memorandum and Order finding

9    claims two through seven to be unexhausted and dismissing the original petition without

10   prejudice and with leave to amend.  Petitioner then filed the First Amended Petition

11   raising only the four exhausted claims ("FAP"). He simultaneously filed a motion to stay

12   and abey this action so he could return to the state courts to exhaust the six unexhausted

13   claims.  Respondent opposed the motion, but the Court granted it on the condition that

14   Petitioner return to this Court within 30 days after exhaustion was completed.

15   [1/28/2002 Order (AN).]

16          On July 15, 2002, Petitioner filed his Second Amended Petition ("SAP") raising

17   *only* the six ostensibly newly-exhausted claims.   Respondent then filed a return

18   ("Original Return"), arguing all six claims in the SAP were procedurally barred, failed

19   on the merits, or were otherwise non-cognizable state-law claims. [Original Return at

20   6-24.] Petitioner subsequently filed a motion for leave to amend the SAP to include the

21

22   

23   [3/] *Clark*, 5 Cal.4th 750; *Robbins*, 18 Cal.4th at 780; *In re Swain*, 34 Cal.2d 300, 304
     (1949); *In re Dixon*, 41 Cal.2d 756 (1953); *In re Lindley*, 29 Cal.2d 709 (1947).
24

25   [4/] The Court takes judicial notice of the state appellate court records for Petitioner's
     case, which are available on the Internet at http://appellatecases.courtinfo.ca.gov. *See*
26   *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial
     notice of relevant state court records in federal habeas proceedings).  No copy of that
27   petition has been lodged with the Court, so it is unclear what claims were raised and on
28   what grounds it was denied.

1 | four originally-exhausted claims contained in the FAP.  The Court granted the motion
2 | and Petitioner then filed the pending TAP.  In response, Respondent filed the
3 | Supplemental Return addressing the four originally-exhausted claims. [Supplemental
4 | Return at 3-34.]  Respondent contends the first of those claims is still not properly
5 | exhausted and all four fail on the merits. [*Id.*] Petitioner has filed his Traverse and the
6 | matter now stands submitted.

## II. ANALYSIS

### A.    Procedural Default

9 | Respondent first argues the six claims Petitioner attempted to exhaust while the
10 | pending action was stayed are barred from federal habeas review. [Original Return at 6-
11 | 8.] Respondent cites to the California Supreme Court's denial of those claims on state
12 | habeas review. [*Id.* at 5, Ex. A at 26.] In denying the petition, the court cited to *Clark*,
13 | 5 Cal.4th 750; *Robbins*, 18 Cal.4th at 780; *Swain*, 34 Cal.2d at 304; *Dixon*, 41 Cal.2d
14 | 756; and *Lindley*, 29 Cal.2d 709. [*Id.*, Ex. A at 26.]  Respondent claims the court's
15 | citations to *Clark* and *Robbins* barred those six claims for substantial delay without good
16 | cause, that the timeliness bar is an independent and adequate state procedural ground and,
17 | therefore, Petitioner's time-barred claims in state court are precluded from federal habeas
18 | review pursuant to the doctrine of procedural default. [*Id.* at 7-8.]
19 | Under the doctrine of procedural default, when a state court denies a challenge to
20 | a criminal conviction for failure to comply with a state procedural rule, a federal court
21 | is precluded from reviewing the claim in the context of a subsequent federal habeas
22 | proceeding. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590 (1991).  For
23 | procedural default to apply, the state court's denial of the claim must rest on a state law
24 | ground that is independent of the federal question and adequate to support the judgment.
25 | *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991). For a state law ground
26 | to be "independent," it must not be interwoven with federal law. *La Crosse v. Kernan*,
27 | 244 F.3d 702, 704 (9th Cir. 2001).  For a state law ground to be "adequate," it must be
28 | strictly or regularly followed and consistently applied. *Id.*  To determine whether a

1   procedural default has occurred, this Court must examine the basis of the relevant state

2   court judgment. *Coleman*, 501 U.S. at 739.

3        Where a California Supreme Court summary denial order rests on multiple

4   citations, and the order does not specify which citation disposes of which claims, all of

5   the citations must support a procedural default in order to bar federal review. *Calderon*

6   *v. District Court (Bean)*, 96 F.3d 1126, 1131 (9th Cir. 1996), *cert. denied*, 520 U.S. 1204,

7   117 S.Ct. 1569 (1997). If any one of the procedural bars invoked is not independent and

8   adequate, none of the claims is procedurally defaulted. *Washington v. Cambra*, 208 F.3d

9   832, 834 (9th Cir.), *cert. denied*, 531 U.S. 919, 121 S.Ct. 282 (2000).

10       Although the California Supreme Court failed to specify which claims were barred

11  for which reasons, each of the citations on which the state high court based its decision

12  independently bars review. Therefore, claims five through ten of the TAP are barred by

13  the doctrine of procedural default. However, even assuming that the state court's

14  decision gave rise to a procedural default, review by this Court is not necessarily

15  precluded. The procedural default doctrine is not jurisdictional but, rather, is based on

16  comity. *Batchelor v. Cupp*, 693 F.2d 859, 863 n.2 (9th Cir. 1982), *cert. denied*, 463 U.S.

17  1212, 103 S.Ct. 3547 (1983). Thus, the federal courts have the power to reach the merits

18  notwithstanding a state procedural default. *Id.* Where it is clear that a claim fails on the

19  merits, the interests of comity and judicial efficiency are better served by addressing the

20  claim on the merits rather than invoking procedural default. *Walters v. Maass*, 45 F.3d

21  1355, 1360 n.6 (9th Cir. 1995). In light of Respondent's briefing on the merits, the Court

22  will proceed to address the merits of all of the claims in the TAP.

23  **B.    Standard of Review**

24       The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides

25  that federal habeas relief "shall not be granted with respect to any claim that was

26  adjudicated on the merits in State court proceedings unless the adjudication of the claim

27  -- (1) resulted in a decision that was contrary to, or involved an unreasonable application

28  of, clearly established Federal law, as determined by the Supreme Court of the United

6

1    States; or (2) resulted in a decision that was based on an unreasonable determination of

2    the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

3    2254(d)(1)-(2). The key to triggering AEDPA's deferential standard is a previous

4    "adjudicat[ion] on the merits in State court proceedings." On the other hand, a state

5    court's decision cannot be contrary to, or an unreasonable application of, clearly

6    established federal law if no Supreme Court precedent creates clearly established federal

7    law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*,

8    378 F.3d 952, 955 (9th Cir.), *cert. denied*, 543 U.S. 1037, 125 S.Ct. 814 (2004).

9        A state court decision is "contrary to" clearly established federal law where the

10   state court applies a rule that contradicts the governing law set forth by the Supreme

11   Court or confronts a set of facts that is materially indistinguishable from those in a

12   decision of the Supreme Court and nevertheless arrives at a different result. *Williams v.*

13   *Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000). The Supreme Court has

14   emphasized that a citation of its cases is not required so long as "neither the reasoning

15   nor the result of the state-court decision contradicts [its governing decisions]." *Early v.*

16   *Packer*, 537 U.S. 3, 8, 123 S.Ct. 362 (2002). Further, what matters is whether the last

17   reasoned *decision* reached by the state court was contrary to controlling federal law, not

18   the intricacies of the analysis. *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir.), *cert.*

19   *denied*, 537 U.S. 851, 123 S.Ct. 205 (2002).

20       A state court decision involves an "unreasonable application of" clearly

21   established federal law where the state court identifies the correct governing legal

22   principle from decisions of the Supreme Court, but unreasonably applies that principle

23   to the facts of the case. *Williams*, 529 U.S. at 407-08. To find that a state court has

24   unreasonably applied Supreme Court precedent, a federal habeas court may not merely

25   conclude that, in its independent judgment, the relevant state court decision was incorrect

26   or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166 (2003). Rather,

27   the state court's application of clearly established federal law must be *objectively*

28   *unreasonable* in view of the operative jurisprudence arising from the Supreme Court's

1    holdings, not *dicta*, at the time the state court rendered its decision. *Id.* at 71-75.

2       AEDPA's deferential standard applies to the claims raised in the pending TAP.

3    Petitioner raised claims two through four in both state appellate courts. [Motion, Exs.

4    D, F.] The intermediate appellate court rejected those claims on the merits in a reasoned

5    opinion. [*Id.*, Ex. E.] The state high court then denied the petition for review without

6    comment. [*Id.*, Ex. G.] Although the state high court's denial was silent, it still

7    constitutes a denial "on the merits" for purposes of federal habeas review, *Hunter v.*

8    *Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240

9    (1993), and the federal claims are deemed to have been rejected for the same reasons

10   given in the last reasoned decision, which in this case is the California Court of Appeal's

11   opinion. *Ylst*, 501 U.S. at 805. To the extent Petitioner's remaining seven claims were

12   denied by the California Supreme Court on collateral review without comment, the

13   AEDPA standard applies to those claims even though the court did not supply a rationale

14   for its conclusion. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). However,

15   the Court must conduct an independent review of the record to determine whether the

16   state court's rejection of those claims was objectively reasonable. *Id.*

17   **C.**    **Facts Established at Trial**

18       On January 11, 1996, two police officers observed Petitioner walking alone on a

19   sidewalk. [RT at 280, 282-84, 309.] When Petitioner saw the officers, he dropped a

20   crumpled paper towel on the ground. [RT at 284-85, 328.] The officers then detained

21   Petitioner to cite him for littering. [RT at 284-85.] When they recovered the paper

22   towel, they un-crumpled it and found a clear plastic baggie with three rocks, which the

23   officers recognized as cocaine. [RT at 285-87, 290, 309, 323.] The three rocks were

24   tested by a criminalist with the Los Angeles County Sheriff's Department and determined

25   to contain .34 grams of rock (freebase) cocaine. [RT at 335-37, 352.] In his defense,

26   Petitioner argued that the officers' account was inaccurate, and that the rocks were never

27   actually tested. [RT at 310-27, 328-33, 337-52, 355-60, 362, 364-65, 389-90, 397-98.]

28   ///

1   **D.    Ineffective Assistance of Appellate Counsel (claim one)**

2   **1.    Exhaustion**

3   Before seeking federal habeas relief, the exhaustion doctrine requires a petitioner

4   to fairly present a claim alleging a violation of federal rights to the state courts in order

5   to give them a fair "opportunity to pass upon and correct the alleged violations" of his

6   rights. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347 (2004); *Rose v. Palmateer*, 395

7   F.3d 1108, 1110 (9th Cir. 2005). In order to fairly present a claim to the state courts, the

8   petitioner "must describe in the state proceedings both the operative facts and the federal

9   legal theory on which his claim is based so that the state courts have a fair opportunity

10  to apply controlling legal principles to the facts bearing upon the constitutional claim."

11  *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir.), *cert. denied*, 538 U.S. 1042, 123 S.Ct.

12  2094 (2003) (internal quotations omitted). A claim is unexhausted if the stated federal

13  legal theory is not expressly linked to, or supported by, any operative facts, which must

14  also be set forth in the petition or brief. *See Baldwin*, 541 U.S. at 29; *Castillo v.*

15  *McFadden*, 370 F.3d 882, 887 (9th Cir. 2004). Further, both the federal legal theory and

16  operative facts for each claim must be stated "with considerable specificity." *Rose*, 395

17  F.3d at 1111. The petitioner has the burden of demonstrating that he has exhausted

18  available state remedies. *Williams v. Craven*, 460 F.2d 1253, 1254 (9th Cir. 1972).

19  Respondent argues that Petitioner has failed to exhaust his first claim (ineffective

20  assistance of appellate counsel) because he presents underlying factual bases in the

21  pending TAP that he did not present in the state courts. [Supplemental Return at 3-6.]

22  In the Traverse, Petitioner concedes Respondent is correct and requests to proceed only

23  on the exhausted portions of claim one. [Traverse at 20.] However, "[a]n application for

24  a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

25  applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. §

26  2254(b)(2). It is appropriate to reach the merits of habeas claims notwithstanding the

27  failure to exhaust available state remedies in those cases in which the interests of comity

28  and federalism will be better served by addressing the merits. *Granberry v. Greer*, 481

1    U.S. 129, 134-35, 107 S.Ct. 1671 (1987). The Court believes this is such a case, and will

2    therefore proceed to address claim one on the merits in its entirety.

3        **2.    Merits Analysis**

4        Petitioner contends he was denied effective assistance of appellate counsel,

5    essentially because his appellate attorney failed to raise six of the pending claims that

6    were not raised on direct appeal. [TAP at 6; attachments; Traverse at 20-22.] A claim

7    of ineffective assistance of counsel has two components: (1) Petitioner must show that

8    counsel's performance was deficient; and (2) Petitioner must show that the deficient

9    performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104

10    S.Ct. 2052 (1984).  Both deficient performance and prejudice must be established to

11    prevail. *Id.* If, for example, it is clear that Petitioner cannot establish prejudice, the claim

12    must be denied regardless of whether counsel's performance was deficient. *Id.* at 697.

13        To establish deficient performance, Petitioner must show that the attorney made

14    errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth

15    Amendment. *Id.*  The proper standard for evaluating attorney performance is that of

16    reasonably effective assistance. *Id.* It is not enough for Petitioner merely to criticize the

17    attorney's trial tactics. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1254 (9th Cir.

18    1986).  Moreover, a court cannot second-guess an attorney's strategic decision when

19    such decision was reasonable under the circumstances. *United States v. Chambers*, 918

20    F.2d 1455, 1461 (9th Cir. 1990). Review of counsel's performance is highly deferential

21    and there is a strong presumption that counsel's conduct fell within the wide range of

22    reasonable representation. *Ferreira-Alameda*, 815 F.2d at 1253.  To overcome this

23    presumption, Petitioner must show that counsel's representation fell below an objective

24    standard of reasonableness. *Strickland*, 466 U.S. at 687-88. This requires a showing of

25    "gross incompetence" on the part of the attorney. *Kimmelman v. Morrison*, 477 U.S.

26    365, 382, 106 S.Ct. 2574 (1986).

27        To establish prejudice, Petitioner must show that counsel's errors were so serious

28    as to deprive him of a fair trial -- that is, a trial whose result is reliable. *Strickland*, 466

1   U.S. at 687.  At a minimum, this requires showing that there is a reasonable probability
2   that, but for counsel's errors, the result would have been different.  *Id.* at 694.
3   Ultimately, however, the prejudice inquiry focuses on whether counsel's deficient
4   performance rendered the result unreliable or the proceeding fundamentally unfair.
5   *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838 (1993).

6          The standard for evaluating a claim of ineffective assistance of appellate counsel
7   is the same as that for evaluating a claim of ineffective assistance of trial counsel -- the
8   petitioner must show deficient performance and prejudice. *Bailey v. Newland*, 263 F.3d
9   1022, 1028 (9th Cir. 2001), *cert. denied*, 535 U.S. 995, 122 S.Ct. 1556 (2002). However,
10  an attorney is not ineffective for failing to raise a meritless legal argument.  *Shah v.*
11  *United States*, 878 F.2d 1156, 1162 (9th Cir.), *cert. denied*, 493 U.S. 869, 110 S.Ct. 195
12  (1989).  This is particularly true in the appellate context, where "the weeding out of
13  weaker issues is widely recognized as one of the hallmarks of effective appellate
14  advocacy." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  Thus, an appellate
15  attorney is not ineffective for failing to raise claims that do not have a reasonable
16  probability of succeeding. *Id.* at 1435.

17         Petitioner's appellate representation was not insufficient. All six of the claims he
18  complains counsel failed to raise have since been rejected at every level of the state
19  courts on collateral review, and have now been rejected on federal habeas review
20  (below). Petitioner's appellate counsel was not ineffective for failing to raise meritless
21  claims. *Shah*, 878 F.2d at 1162.

22         Petitioner makes the additional argument that counsel "failed to augment the
23  record on appeal to include the proceedings for July 23, 1996, or enter into a stipulated
24  agreement as to the missing portion of the record." [TAP, attachment.]  First, this
25  contention appears to be factually frivolous because the record before the Court includes
26  the reporter's transcript of the proceedings on direct appeal, and it includes the
27  proceedings of July 23, 1996. [RT at 514-26.] Petitioner has failed to show that any
28  portion of the record was missing. Further, even assuming, without finding, the truth of

1    Petitioner's assertion, this contention still fails because Petitioner has not established

2    prejudice for the same reasons discussed above, i.e., his appeal would have lacked merit

3    even if the Court of Appeal had reviewed the ostensibly omitted portion of the record.

4    *Strickland*, 466 U.S. at 697. Petitioner's claim of ineffective assistance of appellate

5    counsel fails on the merits.

6    **E.**      **Priors/Sentencing (claims two through four)**

7          **1.**      **Due Process/Equal Protection Claims (claims two and three)**

8        Petitioner next argues the Three Strikes Law is irrationally arbitrary in that it

9    singles out certain repeat offenders for additional punishment, in some cases singling out

10    those whose crimes are of decreasing seriousness and sparing those whose crimes are of

11    increasing seriousness. [TAP at 6; Traverse at 22; Supplemental Return, Ex. D at 57-62.]

12    He also claims the statute violates equal protection for the same reason. [TAP at 7;

13    Traverse at 22, Supplemental Return, Ex. D at 63-66.]

14        "The Equal Protection Clause of the Fourteenth Amendment commands that no

15    State shall 'deny to any person within its jurisdiction the equal protection of the laws,'

16    which is essentially a direction that all persons similarly situated should be treated alike."

17    *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985)

18    (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382 (1982)). However, mere

19    allegations of different treatment do not establish an equal protection violation. *See*

20    *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991) ("[T]he Constitution does not

21    require *identical* treatment. There must be an allegation of invidiousness or illegitimacy

22    in the statutory scheme before a cognizable claim arises: it is a 'settled rule that the

23    Fourteenth Amendment guarantees equal laws, not equal results.'") (emphasis in original;

24    quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293 (1979)).

25        Generally, legislation is presumed to be valid under the Equal Protection Clause

26    and will be upheld if the classification drawn by the legislation is rationally related to a

27    legitimate state interest. *Cleburne*, 473 U.S. at 440; *Coalition for Economic Equity v.*

28    *Wilson*, 122 F.3d 692, 702 (9th Cir. 1997). However, a more exacting "strict scrutiny"

1   of the governmental interest is required when a "fundamental right," such as freedom of

2   speech or the right to vote, or a "suspect class," such as race or alienage, is involved.

3   *Cleburne*, 473 U.S. at 440.  Generally, legislation involving suspect classifications will

4   be upheld only if the legislation is narrowly tailored to serve a compelling state interest.

5   *Id.*  The courts will apply an intermediate level of scrutiny to "quasi-suspect classes,"

6   such as gender and illegitimacy, to determine if the legislation is substantially related to

7   an important state interest. *Id.* at 441.

8          Since there is no allegation in this case that the Three Strikes Law burdens any

9   "suspect" or "quasi-suspect" class, and this statutory sentencing scheme does not infringe

10  on the exercise of a fundamental right, Petitioner must show that he is a member of a

11  class that was denied a benefit available to other similarly situated individuals, and that

12  such denial was not rationally related to legitimate state interests. *United States v.*

13  *Harding*, 971 F.2d 410, 412 (9th Cir. 1992); *see also Hoffman v. United States*, 767 F.2d

14  1431, 1435 (9th Cir. 1985) (applying rational basis test to a California statute that did not

15  burden a suspect class).

16         The fact that sentences occasionally differ from defendant to defendant does not

17  mean Petitioner was the victim of a systematically disparate sentencing scheme.  To the

18  contrary, the United States Supreme Court has upheld the constitutional validity of

19  California's Three Strikes Law, specifically holding that the California legislature had

20  a "reasonable basis" for enacting the law. *Ewing v. California*, 538 U.S. 11, 28, 123

21  S.Ct. 1179 (2003).  The statute provides that a defendant convicted of a felony, who has

22  two or more prior serious or violent felony convictions, is subject to a minimum term

23  calculated as the greater of (i) three times the term otherwise provided as punishment for

24  each current felony conviction subsequent to the two or more prior felony convictions,

25  (ii) twenty-five years, or (iii) a term determined by the court pursuant to a statutory

26  formula. CAL. PENAL CODE §§ 667(e)(2)(A), 1170.12(c)(2)(A). The statute specifically

27  defines "prior felony," "serious" felony, and "violent" felony. CAL. PENAL CODE §§

28  667(d)(1), 1170.12(b)(1).  The prosecution must prove each prior felony conviction for

13

1    the Three Strikes Law to apply. CAL. PENAL CODE §§ 667(f)(1), 1170.12(d)(1).

2        The prosecution has discretion to move to dismiss a prior felony conviction
3    allegation in the furtherance of justice, or if there is insufficient evidence to prove the
4    prior felony conviction. CAL. PENAL CODE §§ 667(f)(2), 1170.12(d)(2). The court may
5    also dismiss the allegation on its own motion in the furtherance of justice, or if it finds
6    that there is insufficient evidence to prove the prior felony conviction. CAL. PENAL CODE
7    §§ 667(f)(2), 1170.12(d)(2), 1385; *Romero, supra*, 13 Cal.4th at 504. In ruling, courts
8    consider whether, "in light of the nature and circumstances of [the defendant's] present
9    felonies and prior serious and/or violent felony convictions, and the particulars of his
10   background, character, and prospects, the defendant may be deemed outside the [Three
11   Strikes'] scheme's spirit, in whole or in part." *Ewing*, 538 U.S. at 17 (quoting *People v.*
12   *Williams*, 17 Cal.4th 148, 161, 69 Cal.Rptr.2d 917 (1998)).

13       The purpose behind California's Three Strikes Law is "to ensure longer prison
14   sentences and greater punishment for those who commit a felony and have been
15   previously convicted of serious and/or violent felony offenses." CAL. PENAL CODE §
16   667(b). "It is enough that the State of California has a reasonable basis for believing that
17   dramatically enhanced sentences for habitual felons advances the goals of its criminal
18   justice system in any substantial way." *Ewing*, 538 U.S. at 28 (citation omitted). As
19   the foregoing demonstrates, California's Three Strikes Law is rationally related to
20   legitimate state interests. Therefore, Petitioner has failed to show his sentence pursuant
21   to that statutory scheme is unconstitutionally arbitrary or that it violates the Equal
22   Protection Clause.

23       **2.    Eighth Amendment (claim four)**

24       Petitioner next contends that his prison sentence of 25 years to life constitutes
25   cruel and unusual punishment in violation of the Eighth Amendment. [TAP at 7;
26   Traverse at 22; Supplemental Return, Ex. D at 67-74.] In denying this claim on direct
27   appeal, the Court of Appeal found Petitioner's sentence is not grossly disproportionate
28   to his crime and criminal history under the Eighth Amendment. [Supplemental Return,

1    Ex. E at 92.]  The Court of Appeal's decision was not contrary to, or an unreasonable

2    application of, clearly established federal law.

3           The Court of Appeal summarized Petitioner's criminal history as follows:[5/]

4             [Petitioner's] qualifying "strike" convictions were for robbery.

5           Two of the convictions were sustained in the same proceeding on

6           November 14, 1984, and two were sustained in the same proceeding

7           on May 15, 1990.  [Petitioner] was born in 1963, and his adult

8           criminal history began in 1982.  In addition to the four robberies,

9           [Petitioner] had miscellaneous other convictions, including attempted

10          grand theft auto, attempted burglary and sale of marijuana.  For those

11          convictions, [Petitioner] had been placed on probation and sentenced

12          to state prison.  He was last paroled four months prior to the instant

13          offense.  While on parole, he tested positive for drug use.

14    [*Id.* at 91.]  In light of that criminal history, Petitioner's sentence was not grossly

15    disproportionate to his challenged commitment offense.  *See Andrade*, 538 U.S. at 66-68

16    (holding that state court's affirmance of two consecutive sentences of 25 years to life for

17    petty theft with a prior was not contrary to or an unreasonable application of federal law);

18    *see also Ewing*, 538 U.S. at 17-19 (holding that a sentence of 25 years to life for felony

19    grand theft under the California Three Strikes Law did not violate the Eighth

20    Amendment's prohibition of cruel and unusual punishment); *see also Rios v. Garcia*, 390

21    F.3d 1082, 1086 (9th Cir. 2004) (no Eighth Amendment violation where petitioner had

22    a lengthy criminal history and had been imprisoned several times).  Petitioner has not met

23

24

25

26

27

28

---

   [5/]  A state court's determinations of factual issues under AEDPA are presumed to be correct unless the petitioner has rebutted the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).  Petitioner has not specifically disputed the Court of Appeal's summary of his criminal history, let alone rebutted it with clear and convincing evidence.  Therefore, under AEDPA, it is presumed to be correct.

1   his heavy burden of showing this case is an "exceedingly rare or extreme case"

2   warranting federal habeas relief. *See, e.g., Ramirez v. Castro*, 365 F.3d 755, 765, 770

3   (9th Cir. 2004) (holding a sentence of 25 years to life was grossly disproportionate where

4   the petitioner's entire criminal history consisted of two, non-violent second degree

5   burglary convictions suffered in the same case and consolidated into a single guilty plea,

6   for which the petitioner received a one-year jail sentence and was successfully released

7   on probation after serving less than seven months).

8       Petitioner places emphasis on his triggering offense, however, "[t]he California

9   Legislature . . . made a deliberate policy decision . . . that the gravity of the new felony

10   should not be a determinative factor in triggering the application of the Three Strikes

11   Law. Neither the Eighth Amendment nor this Court's precedent forecloses that

12   legislative choice." *Ewing*, 538 U.S. at 30 n.2. Further, the Supreme Court has upheld

13   recidivist or life sentences in light of a defendant's severe criminal history where the

14   "triggering" offense was the theft of three golf clubs, petty theft, obtaining $120.75 by

15   false pretenses and, most significant here, a *first offense* of possession of cocaine. *Id.* at

16   17-19; *Andrade*, 538 U.S. at 66-68; *Harmelin v. Michigan*, 501 U.S. 957, 996, 111 S.Ct.

17   2680 (1991); *Rummel v. Estelle*, 445 U.S. 263, 285, 100 S.Ct. 1133 (1980). Like those

18   cases, Petitioner's sentence "is justified by the State's public-safety interest in

19   incapacitating and deterring recidivist felons, and amply supported by his own long,

20   serious criminal record." *Ewing*, 538 U.S. at 29-30.

21       To the extent Petitioner specifically supports his Eighth Amendment claim by

22   alleging his sentence is disproportionate to others convicted of the same or similar

23   offenses in the same jurisdiction and in other jurisdictions, his claim again fails. That

24   argument is derived from the intra- and inter-jurisdictional analyses in *Solem v. Helm*,

25   463 U.S. 277, 291-92, 103 S.Ct. 3001 (1983). However,

26           *Solem* is best understood as holding that comparative analysis

27           within and between jurisdictions is not always relevant to

28           proportionality review. The [United States Supreme Court] stated

1          that "it may be helpful to compare sentences imposed on other
2          criminals in the same jurisdiction,' and that 'courts may find it
3          useful to compare the sentences imposed for commission of the
4          same crime in other jurisdictions." (citation omitted).  It did not
5          mandate such inquiries.  A better reading of our cases leads to the
6          conclusion that intrajurisdictional and interjurisdictional analyses
7          are appropriate only in the rare case in which a threshold
8          comparison of the crime committed and the sentence imposed leads
9          to an inference of gross disproportionality.

10   *Harmelin*, 501 U.S. at 1004-05 (Kennedy, J., joined by O'Connor and Souter, JJ.,

11   concurring).  As discussed above, this is not one of the exceedingly rare cases where such

12   an inference is established, so the *Solem* factors do not enter into this Court's analysis.

13          Based upon the foregoing, the Court finds the state court's rejection of Petitioner's

14   Eighth Amendment claim was not contrary to, or an unreasonable application of, clearly

15   established federal law.

16          To the extent Petitioner claims his sentence is cruel and unusual under the

17   California Constitution, his claim is not cognizable in this Court.  A federal court may

18   entertain an application for a writ of habeas corpus by a state prisoner "only on the

19   ground that he is in custody in violation of the Constitution or laws or treaties of the

20   United States." 28 U.S.C. § 2254(a). Violations of state law are generally not cognizable

21   in a federal habeas corpus petition, and this Court is bound to respect a state-law finding

22   made by a state court.  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991);

23   *Mason v. Dunbar*, 317 F.2d 358, 359 (9th Cir. 1963).

24          Petitioner's fourth claim lacks merit.

25   **F.     Alleged *Brady* Violation (claim six)**

26          Petitioner contends the prosecution withheld key documents, which would have

27   exonerated him. [TAP at attachments; Traverse at 13-15.]  Specifically, he claims the

28   prosecution suppressed a lab receipt, the chain of custody forms used by officers when

1   booking evidence in or out of the evidence locker, and reports from preliminary tests
2   conducted on the cocaine before it went into the lab. [TAP at attachments.] However,
3   Petitioner has not shown or alleged precisely what is contained in these documents that
4   would have impeached testimony by prosecution witnesses or otherwise exonerated him.
5   He *does* make the unsupported assertion that the documents would have established the
6   cocaine admitted at trial "is someone else's property" [RT at 14], but completely fails to
7   allege or show why.

8         Under the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct.
9   1194 (1963), "the government violates its constitutional duty to disclose material
10  exculpatory evidence where (1) the evidence in question is favorable to the accused in
11  that it is exculpatory or impeachment evidence, (2) the government willfully or
12  inadvertently suppresses this evidence, and (3) prejudice ensues from the suppression
13  (i.e., the evidence is 'material')." *Silva v. Brown,* 416 F.3d 980, 985 (9th Cir. 2005)
14  (citing *Strickler v. Green,* 527 U.S. 263, 281-82, 119 S.Ct. 1936 (1999)).  However,
15  evidence is material only if there is a reasonable probability that, had the evidence been
16  disclosed to the defense, the result of the proceeding would have been different. *United*
17  *States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985).  To make the required
18  showing, it is not sufficient for the petitioner to speculate. *United States v. Croft*, 124
19  F.3d 1109, 1124 (9th Cir. 1997).  The mere possibility that undisclosed evidence *might*
20  have helped the defense, or *might* have affected the outcome of the trial, does not
21  establish materiality. *Id.* Further, suppression by the government is a necessary element.
22  *United States v. Dupuy*, 760 F.2d 1492, 1502 n.5 (9th Cir. 1985).  A *Brady* claim fails
23  if the means of obtaining the exculpatory evidence has been provided to the defense. *Id.*

24        Petitioner has failed to establish several elements of a *Brady* claim.  First, he has
25  not shown any document existed that was unavailable to him, regardless of whether it
26  was or was not in the prosecution's possession.  For example, as Respondent points out,
27  the record establishes the lab receipt was attached to other evidence in court, and was
28  even used by Petitioner's on cross-examination. [RT at 351-52, 357-60.]

Second, in light of the testimony at trial establishing an error-free chain of custody in this case, Petitioner has failed to show the documents at issue were in fact exculpatory. At trial, Officer Rick Vaselenko, one of the arresting officers, testified that, after placing Petitioner under arrest, they transported him to the Inglewood Police Department. [RT at 287, 323.] The paper towel and the baggie inside containing the rocks of cocaine were kept in the front seat with the officers while en route. [*Id.*] Once at the police station, Vaselenko's partner, Officer Goodro, weighed the narcotics and booked them into evidence in Vaselenko's presence. [RT at 287, 324.] As part of normal procedure, Officer Goodro placed the rock cocaine into a smaller Ziplock baggie. [RT at 289-90.] He also initialed a small piece of paper and placed it inside the baggie. [RT at 290.] He then marked the baggie for laboratory testing and placed it in the narcotics bin for testing. [RT at 325-26.]

Jason Van Clef, a criminalist with the Los Angeles County Sheriff's Department who tested the cocaine found in Petitioner's possession, testified that he had performed approximately 250 examinations of rock cocaine before testing the cocaine found in Petitioner's possession, and had never to his knowledge previously made a mistake or tainted evidence. [RT at 335-36, 348.] He obtained the cocaine evidence in a sealed envelope from an evidence locker at the Scientific Services Bureau. [RT at 336-37.] The narcotics were never out of his sight during testing. [RT at 349.] He conducted a physical and chemical analysis and determined it was rock cocaine. [RT at 336-37, 352.]

Officer Vaselenko removed the envelope containing the small baggie of cocaine, as well as the original baggie and paper towel, from an evidence locker on the day he testified, and then he brought them to court. [RT at 287-88.] He recognized all of it in Court as the evidence his partner booked after Petitioner's arrest. [RT at 288-89.] At trial, the evidence still contained the piece of paper with his partner's initials, and had also been marked by Van Clef. [RT at 288-89, 358-59.] Nothing in the record rebuts the above testimony, which indicates the police handled the evidence carefully and that no mistakes were made. Further, Van Clef testified very specifically about how the testing

1    was done [RT at 334-61], and nothing in his testimony indicates any mistakes or
2    wrongdoing compromised the evidence.

3           There is a very high likelihood that the allegedly suppressed evidence would have
4    either been cumulative of Van Clef's testimony or otherwise further established
5    Petitioner's guilt, particularly since the record demonstrates absolutely no chain of
6    custody problems. Regardless, Petitioner has not proffered an iota of evidence to suggest
7    the allegedly withheld documents would have rebutted Van Clef's or Vaselenko's
8    testimony or impeached their credibility. As a result, Petitioner has not shown that the
9    documents he sought were exculpatory. *Silva*, 416 F.3d at 985.

10          Petitioner has also failed to show these documents would have made any
11   difference in the outcome of his trial in light of the fact that officers caught him in
12   possession of a clear plastic baggie containing three rocks of a substance they recognized,
13   from their extensive training and experience, as cocaine. [RT at 285-87, 290, 309, 323.]
14   Petitioner has fallen short of demonstrating, even if he had received the documents he
15   complains of, that they were material, i.e., there was a reasonable probability that, had
16   the evidence been disclosed to the defense, the result of the proceeding would have been
17   different. *Bagley*, 473 U.S. 682.

18          Petitioner has not established a *Brady* violation. As a result, his contention that
19   the cumulative effect of alleged *Brady* violations entitles him to relief also fails. *Rupe*
20   *v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

21   **G.     Alleged Trial Court Errors (claims five, seven through nine)**

22          **1.     Alleged Trial Court Errors Based On Chain of Custody/Chemical Tests**

23          Petitioner alleges a litany of various trial court errors based on the prosecution's
24   failure to turn over the allegedly exculpatory documents that were the subject of his
25   *Brady* claim, and based on challenges he wished to make to Van Clef's conclusions,
26   generally. He argues that the trial court: (1) caused a delay in funds to use the Los
27   Angeles County Jail telephone and contact witnesses; (2) refused or otherwise ignored
28   his attempts to enforce discovery requests; (3) improperly denied his motion for a new

trial based upon newly-discovered evidence, which consisted of the alleged exculpatory documents he had not discovered; (4) failed to appoint a forensic chemist to challenge Van Clef's conclusions; and (5) denied his right to confront one of the arresting officers, as well as an officer who allegedly checked the cocaine evidence out of the evidence locker for the preliminary examination.[6] [TAP at attachments; Traverse at 11-13, 17-18.]

Although each of Petitioner's contentions fail, it is unnecessary to address each of them specifically because Petitioner has failed to point to anything in the record suggesting he ever had an iota of evidence that the rocks of cocaine found in his possession were mishandled or tainted in the chain of custody, that he ever developed any theory as to how they were mishandled, or that his requests for documents, the content of which he is unaware, were anything short of a fishing expedition.

A habeas petitioner is entitled to relief only if an alleged error had a "substantial and injurious effect or influence in determining the jury's verdict," and *only* if he can establish *actual* prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637, 113 S.Ct. 1710 (1993). Petitioner has proffered nothing more than a wish, that he would like to have argued the state mishandled evidence. Without offering more, he seeks federal habeas relief -- the reversal of his entire trial -- based on the speculative assertion that, had he been authorized funds for the phone more quickly, and had the alleged documents been handed over, he would have hired an expert who would have revealed the

---

[6] Petitioner raises several of these factual allegations as part of a claim of ineffective assistance of trial counsel "due to judicial interferences with presenting a defense." [TAP at attachments; Traverse at 11-13.] However, as Respondent points out, Petitioner is precluded from relief on such a claim because he represented himself at trial. "[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S.Ct. 2525 (1975). Nevertheless, in the interests of justice, the Court construes that claim as a cognizable federal claim alleging the trial court violated due process and the right to present an adequate defense.

1   hypothetical mistake, which would *then* have led to an theory of how this mistake
2   occurred, resulting in his exoneration.  Because his assertions are based on mere
3   conjecture,[7] he has fallen far short of meeting his burden to demonstrate any alleged
4   errors caused actual prejudice. *Brecht*, 507 U.S. at 623. Petitioner has failed to establish
5   that the trial court made any ruling or omission that violated the federal Constitution.

6           In light of the fact Petitioner was caught "red-handed" by police while in
7   possession of three rocks of cocaine, the only issue left to attack is the chain of custody
8   of the cocaine before trial.  However, during trial, as well as on direct appeal and in his
9   numerous state habeas petitions, and now in his pending federal habeas petition,
10  Petitioner has failed to support his claims that the evidence was tainted, replaced,
11  untested, or falsified, with anything but conjecture.  In fact, the record belies his
12  contentions.  Petitioner has not met his burden to establish that the rocks of cocaine
13  tested and presented at his trial were not the rocks found in his possession.  As a result,
14  his claims of trial court error, even assuming, without finding, the truth of each of his
15  assertions, had no effect on the verdict and are therefore harmless. *Id.* at 623, 637.

16          **2.     Fair Sentencing Hearing**

17          Petitioner claims he did not receive a fair sentencing hearing because the judge
18  failed to give him adequate time to review the probation report and failed to grant a
19  continuance so Petitioner could correct its alleged errors and present mitigating evidence.
20  [TAP at attachments; Traverse at 15-16.] This claim is legally and factually frivolous.

21          First, in making these allegations, Petitioner is essentially claiming the trial court
22  abused its discretion under California law and so his claim is not cognizable on federal
23  habeas review. *Estelle*, 502 U.S. at 67-68.  Petitioner cannot transform a state law issue
24  into a federal one merely by labeling it a constitutional claim. *Langford v. Day*, 110 F.3d
25  1380, 1389 (9th Cir.), *cert. denied*, 522 U.S. 881 (1997); *see also Makal v. State of*
26
27
_____

[7] In fact, he has failed to show the testimony of the law enforcement officers he
28  sought to call as witnesses would have done anything more than implicate him further.

1    *Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976) ("So long as the type of punishment is not

2    based upon any proscribed federal grounds such as being cruel and unusual, racially or

3    ethnically motivated, or enhanced by indigency, the penalties for violations of state

4    statutes are matters of state concern.").

5        Second, the record rebuts Petitioner's assertion.   At sentencing, Petitioner

6    requested time to review his probation report and the court granted it, but advised

7    Petitioner that his sentencing discretion was "extremely limited." [RT at 542-43.] The

8    court also noted that the probation report was "not very lengthy." [RT at 542.] More

9    than three hours later, court resumed and Petitioner stated, "I am completely opposed to

10   the probation officer's report." [RT at 544.] He made no indication he needed more time

11   to review the report, find additional errors, or prepare argument on additional mitigating

12   factors.  More important, Petitioner was then afforded the opportunity to state all of his

13   objections to the probation report on the record and he did so. [RT at 544-46.] Each of

14   the arguments Petitioner alleges went unheard are in the record. [*Id.*; Traverse at 16.]

15       Third, Petitioner fails to appreciate how limited the trial judge's discretion was

16   after a jury found *four* prior strikes to be true.

17           [A] court abuses its discretion if it dismisses a case, or strikes a

18           sentencing allegation, solely to accommodate judicial convenience or

19           because of court congestion. (internal quotations and citation omitted).

20           A court also abuses its discretion by dismissing a case, or a sentencing

21           allegation, simply because a defendant pleads guilty.   (internal

22           quotations and citation omitted).  Nor would a court act properly if

23           guided solely by a personal antipathy for the effect that the three strikes

24           law would have on a defendant, while ignoring [the] defendant's

25           background, the nature of his present offenses, and other individualized

26           considerations. (internal quotations and citation omitted).

27   *Romero*, 13 Cal.4th at 531.

28   / / /

1            We therefore believe that, in ruling whether to strike or vacate

2    a prior serious and/or violent felony conviction allegation or finding

3    under the Three Strikes law, on its own motion, "in furtherance of

4    justice" pursuant to Penal Code section 1385(a), or in reviewing such

5    a ruling, the court in question must consider whether, in light of the

6    nature and circumstances of his present felonies and prior serious

7    and/or violent felony convictions, and the particulars of his

8    background, character, and prospects, the defendant *may be deemed*

9    *outside the scheme's spirit, in whole or in part, and hence should be*

10   *treated as though he had not previously been convicted of one or more*

11   *serious and/or violent felonies.*

12   *Williams, supra,* 17 Cal.4th at 161. (emphasis added).

13           Petitioner's criminal history includes four prior strike convictions based on two

14   separate robberies, *plus* "miscellaneous other convictions, including attempted grand

15   theft auto, attempted burglary and sale of marijuana." [Supplemental Return, Ex. E at

16   91.]    Under those circumstances, it is difficult to imagine a rational trial court

17   determining he was somehow "outside the scheme's spirit." To the extent Petitioner

18   contends further briefing would have allowed the court to more fully consider his

19   employment status, education, sobriety, or housing situation [Traverse at 16], he has

20   failed to show those factors would have had any effect whatsoever on his sentence in

21   light of the court's limited discretion. Thus, even if the trial court had never considered

22   Petitioner's mitigating factors, it would not have resulted in prejudice. *Brecht,* 507 U.S.

23   at 623, 637. Petitioner's sentencing hearing was constitutionally sufficient.

24   **H.    Sufficiency of the Evidence (claim ten)**

25           Petitioner contends the evidence was insufficient to convict him of possession of

26   rock cocaine on substantially the same unsupported allegations argued above, i.e., that

27   the evidence was tainted and law enforcement otherwise lied or falsified evidence. [TAP

28   at attachments; Traverse at 19-20.] A habeas petitioner is entitled to relief on a claim of

1  insufficiency of the evidence only if he can establish that, given the evidence adduced
2  at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable
3  doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781 (1979). The Court's task
4  is not to determine whether it believes the evidence at trial established guilt beyond a
5  reasonable doubt. *Id.* at 318-19. The Court must respect the province of the jury to
6  determine the credibility of witnesses, resolve conflicts in the testimony, weigh the
7  evidence, and to draw reasonable inferences from proven facts. *Id.* at 319. The Court
8  is not required to affirmatively rule out every hypothesis except that of guilt. *Id.* at 326.
9  In short, the role of the habeas court is limited to determining whether, *after viewing the*
10 *evidence in the light most favorable to the prosecution*, any rational trier of fact could
11 have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319.
12 Furthermore, a reviewing court faced with a record of historical facts that supports
13 conflicting inferences must presume -- even if it does not affirmatively appear in the
14 record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and
15 must defer to that resolution. *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000).

16        The record shows that the evidence supporting Petitioner's conviction was
17 sufficient as to every element of the charged offense. Under California law, the elements
18 of the crime of possession of a controlled substance are: (1) dominion and control over
19 the substance, (2) in a quantity useable to consumption or sale, and (3) knowledge of the
20 substance and its character. *People v. Palaschak*, 9 Cal.4th 1236, 1242, 40 Cal.Rptr.2d
21 722 (1995). These elements were well supported in this case. Petitioner dropped a
22 crumpled paper towel on a sidewalk in front of two police officers. [RT at 280, 282-85,
23 309, 328.] The officers un-crumpled it and found a clear plastic baggie with three rocks,
24 which they recognized as cocaine. [RT at 285-87, 290, 309, 323.] The three rocks were
25 tested and determined to contain .34 grams of rock (freebase) cocaine. [RT at 335-37,
26 352.] One of the arresting officers testified that the rocks found in Petitioner's
27
28

1    possession constituted a "useable" quantity.[8/] [RT at 290-91.]

2        Petitioner's arguments not only amount to mere conjecture, but also fail to respect

3 the province of the *jury* to determine the credibility of witnesses, resolve conflicts in the

4 testimony, weigh the evidence, and draw reasonable inferences from proven facts.

5 *Jackson*, 443 U.S. at 319. The evidence supporting Petitioner's conviction for possession

6 of rock cocaine was by far sufficient. Claim ten fails on the merits.

7                  **III. RECOMMENDATION**

8        In accordance with the foregoing, IT IS RECOMMENDED that the Court issue

9 an order: (1) approving and adopting this Report and Recommendation; and (2) directing

10 that judgment be entered dismissing this action with prejudice.

11

12

13 Dated: _____July 17_____, 2006        _____

14                                     ARTHUR NAKAZATO

                           UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

---

24    [8/] Under California law, the usable-quantity rule prohibits conviction *only* where "the

25 substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace," not where a visible amount of cocaine is found, as happened here. *People*

26 *v. Rubacalba*, 6 Cal.4th 62, 66, 23 Cal.Rptr.2d 628 (Cal. 1992). "No particular purity or

27 narcotic effect need be proven." *Id.* Also, "the mere possession of a narcotic constitutes substantial evidence to sustain a finding that the possessor of the narcotic knew its

28 nature." *People v. Woods*, 108 Cal.App.2d 50, 52 (Cal. Ct. App. 1951).